(82 N. W. Rep. 734.)

---

MORTIMER WEBSTER *vs.* CITY OF FARGO, *et al.*

Opinion filed May 5, 1900.

**Constitutional Law—Frontage Assessment for Cost of Street Paving.**

> A legislative enactment which charges the entire cost of paving the streets of a city against the property abutting the paving, and in proportion to frontage, is not in contravention to the fourteenth amendment to the Federal Constitution.

**Legislative Power as to Local Assessment by Municipal Corporation.**

> In exercising the power of local assessment, the legislature is not limited to the actual increase in value of the property assessed, resulting from the local improvement. Rolph v. City of Fargo, 7 N. D. 640, 76 N. W. Rep. 242, followed.

Appeal from District Court, Cass County; *Pollock, J.*

Action by Mortimer Webster against the City of Fargo and others. Judgment for defendants, and plaintiff appeals.

Affirmed.

*Newman, Spalding & Stambaugh,* for appellants.

*C. J. Mahnken* and *J. E. Green,* for respondents.

BARTHOLOMEW, C. J. This action was brought to cancel and annul a special assessment for paving purposes in the City of Fargo.

The assessment was levied in 1896, pursuant to the statutes then in force, being article 17, chapter 28, Pol. Code 1895. The complaint affirmatively sets forth the due compliance with all the statutory requirements in making the assessment, and seeks to avoid the assessment upon the sole ground that the statute under which it was made contravenes the fourteenth amendment to the federal constitution, in that it deprives the owner of the premises of his property without due process of law, and of the equal protection of the laws, and without an opportunity to be heard as to the justice of the amount demanded. A demurrer to the complaint was sustained.

This assessment was made under section 2280, Rev. Codes 1895, which reads: "Whenever any work or improvement mentioned in the preceding section shall have been determined upon and the contract let therefor, the city engineer shall forthwith calculate the amount to be assessed for such improvement for each lot or parcel of ground abutting or bounding upon such improvement. And in estimating the assessment he shall take the entire cost of such improvement and divide the same by the number of feet fronting or abutting upon the same, and the quotient shall be the sum to be assessed per front foot so bounding or abutting, and said estimate shall be filed with the city auditor and shall be presented to the city council for its approval at the first meeting held thereafter. The city auditor shall cause said estimate of the city engineer, together with a notice of the time and place when the council will meet to approve of the same, to be published in the official newspaper of the city for at least ten days prior to the meeting of the city council to approve the same." A similar assessment under this same section, and resting in all respects upon the same basis, was before this court in *Rolph* v. *City of Fargo*, 7 N. D. 640, 76 N. W. Rep. 242. That assessment was resisted upon substantially the same grounds that are urged here. As the question was then new in this jurisdiction, and was of much importance, and as this court conceived the adjudications upon the point to be conflicting and somewhat uncertain, a very elaborate opinion was prepared by Chief Justice Corliss, in which the underlying principles were discussed at length, and the leading cases upon all phases of the question were cited. After the fullest consideration, we upheld the assessment. We are now asked, however, to reverse that holding for the reason that the Federal Supreme Court, in the case of *Village of Norwood* v. *Baker*, 172 U. S. 269, 19 Sup. Ct. Rep. 187, 43 L. Ed. 443 (decided since our decision in the *Rolph Case*), have established the broad principle that all special assessments upon the basis of frontage are in violation of the fourteenth amendment to the federal constitution, in that they may result in taking of property without due process of law. That appellant's view of that case has support in the case is shown by the fact that the decision has been thus construed in *Fay* v. *City of Springfield* (C. C.) 94 Fed. Rep. 409, and *Cowley* v. *City of Spokane* (C. C.) 99 Fed.

N. D. R.—14

Rep. 840. After a careful study of the opinion in *Village of Norwood* v. *Baker,* we are not convinced that the court intended to enunciate the broad proposition for which appellant contends. Rather, we·think that case depended entirely upon the particular statutes of the State of Ohio there considered, and that such statutes as construed by that court authorized a special assessment on the front-foot plan without any legislative determination, express or implied, that such property had been specially benefited to the extent of the special assessment or at all. As we read the opinion, the assessment was not held void because it was levied on the front-foot plan,—a special assessment by valuation would have been equally void and for the same reason,—because corresponding special benefit had been in no way ascertained or declared. We do not think the court intended to negative the proposition that a legislature has power to fix the taxing district that should be specially benefited by a designated improvement, and place 'the entire cost of such improvement upon such taxing district. We think that court has repeatedly held the affirmative of that proposition. In *Spencer* v. *Merchant,* 125 U. S. 355, 8 Sup. Ct. Rep. 926, 31 L. Ed. 767, that court said: "The legislature, in the exercise of its power of taxation, has the right·to direct the whole or a part of the expense of a public improvement, such as the laying out, grading, or repairing of a street, to be assessed upon the owners of lands benefited thereby, and the determination of the territorial districts which should be taxed for a local improvement is within the province of legislative discretion." In *Williams* v. *Eggleston,* 170 U. S. 304, 18 Sup. Ct. Rep. 617, 42 L. Ed. 1047, the court said: "Neither can it be doubted that, if the state constitution does not prohibit, the legislature, speaking generally, may create a new taxing district, determine what territory shall belong to such district, and what property shall be considered as benefited by a proposed improvement." In *Mobile County* v. *Kimball,* 102 U. S. 691, 26 L. Ed. 238, the court said at page 703, 102 U. S., and page 242, 26 L. Ed.: "Here the objection urged is that it fastens upon one county the expense of an improvement for the benefit of the whole state. Assuming this to be so, it is not an objection which destroys its validity. When any public work is authorized, it rests with the legislature, unless restrained by constitutional provisions, to determine in what manner the means to defray its costs shall be raised. It may apportion the burden ratably among all the counties or other particular subdivisions of the state, or lay.the greater share of the whole upon that county or portion of the state specially and immediately benefited by the expenditure." In *Bauman* v. *Ross,* 167 U. S. 548, 17 Sup. Ct. Rep. 966, 42 L. Ed. 270, the court said at page 589, 167 U. S., page 982, 17 Sup. Ct. Rep., and page 288, 42 L. Ed.: "But it is for the legislature and not for the judiciary, to determine whether the expense of a public improvement should be borne by the whole state, or by the district or neighborhood immediately benefitted.,, And again: "The legislature, in the exercise of the

right of taxation, has the authority to direct the whole, or such part as it may prescribe, of the expense of a public improvement, such as the establishing, the widening, the grading, or the repair of a street, to be assessed upon the owners of lands benefited thereby." And again: "The class of lands to be assessed for the purpose may be either determined by the legislature itself, by defining a territorial district, or by other designation; or it may be left by the legislature to the determination of commissioners, and be made to consist of such lands, and such only, as the commissioners shall decide to be benefitted." And still further: "The rule of apportionment among the parcels of land benefitted also rests within the discretion of the legislature, and may be directed to be in proportion to the position, the frontage, the area or the market value of the lands, or in proportion to the benfits as estimated by commissioners. In *Parsons* v. *District of Columbia,* 170 U. S. 45, 18 Sup. Ct. Rep. 521, 42 L. Ed. 943, the court sustained a specific assessment per front foot upon property abutting upon a street improvement, and quoted with approval from section 752, Dill. Mun. Corp. (4th Ed.) as follows: "Whether the expense of making such improvement shall be paid out of the general treasury, or be assessed upon the abutting property or other property specially benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefitted, or alone upon the abutters, according to frontage or according to the area of their lots, is, according to the present weight of authority, considered to be a question of legislative expediency." And see, also, *Irrigation District* v. *Bradley,* 164 U. S. 112, 17 Sup. Ct. Rep. 56, 41 L. Ed. 369; *Davidson* v. *New Orleans,* 96 U. S. 97, 24 L. Ed. 616; *Walston* v. *Nevin,* 128 U. S. 578, 9 Sup. Ct. Rep. 192, 32 L. Ed. 544; *Shoemaker* v. *U. S.,* 147 U. S. 282, 13 Sup. Ct. Rep. 361, 37 L. Ed. 170; *Paulson* v. *Portland,* 149 U. S. 30, 13 Sup. Ct. Rep. 750, 37 L. Ed. 637; *Willard* v. *Presbury,* 81 U. S. 676, 20 L. Ed. 719. In all these cases, as we understand them, the power of the legislature to create special taxing districts, and to charge the cost of a local improvement, in whole or in part, upon the property in said district, either according to valuation or superficial area or frontage, has been recognized and declared. We do not believe it was the intention of the Federal Supreme Court in *Village of Norwood* v. *Baker* to depart from this line of decisions. It is true that in many of these cases the court speak of these special assessments as being dependent upon special benefits, and to be made according to benefits received. We endeavored in the *Rolph Case* to show that all taxation was, in theory, based upon benefits conferred, and that in theory those benefits must always equal or exceed the burden imposed. Upon no other ground can taxation be ethically defended. It matters not whether the taxation be for the general support of the government that protects person and property, or for the maintenance of the schools that furnish education, or for the construction of buildings in which the public may transact business,—alike in each case,

the theory is benefits conferred commensurate with the burdens imposed. This legislative power of general taxation for public purposes is so universally conceded that no taxpayer ever raises the question of benefits. Indeed, he cannot raise it, because the legislative authorization of the tax is a legislative determination that the tax is for the benefit of the public, and the right of the legislature to make that determination is exclusive; and, it being once established that the tax is for the benefit of the public, no individual member of that public can be heard to say that he is not benefited, or that he is not benefited as largely as any other individual having the same amount of taxable property. Of course, this power of the legislature, while plenary within the limits of the constitution, yet is not an arbitrary power. The taxation must be for a public purpose. An attempt to lay a general tax for a private purpose would be confiscation, and a court would at once defeat it. But a proper state tax is conclusively presumed to be for the benefit of every taxpayer in the state; a proper county tax is conclusively presumed to be for the benefit of every taxpayer in the county; and so for cities, townships, and school districts. In each instance the tax is presumed to be for the benefit of every taxpayer in the taxing district. Yet experience teaches us every day that this is only a theory. It is not a fact, and never can be. But it must be adhered to as a theory, and accepted as a fact, or taxation must cease. The legislature may make a mistake. It may authorize a tax for a public purpose that ultimately fails to prove a public benefit in fact. But that does not affect the legislative power.

These general principles apply to and control special taxation and special assessments. The fact that the legislature has by law fixed certain permanent taxing districts does not deprive it of the power to fix other and special taxing districts, when by legislative determination such district is to receive a special benefit. It may not tax one district for the benefit of another, any more than it might tax one county for the benefit of another, or authorize a general tax for a private purpose. But if the purpose be one that ostensibly and reasonably confers a special benefit upon a special locality, then the legislative power is plenary, within the limits of the organic law. As said by Mr. Justice Brewer in his dissenting opinion in *Village of Norwood* v. *Baker*: "The legislative act charging the entire cost of an improvement upon certain described property is a legislative determination that the property described constitutes the area benefited, and also that it is benefited to the extent of such cost." And this legislative determination having been reached, and the legislature having the exclusive power to make the determination, it cannot be questioned. And, the fact of special benefit to the special district being thus established, no taxpayer in that district can be heard to say that he is not benefited, or that he is not benefited as largely as any other taxpayer in the special taxing district having the same valuation, area, or frontage, as the case may be. No reason can be assigned why the taxpayer in the special

district should have any more right to raise that question than the taxpayer in the permanent district. It never can be correct to say that special assessments must be measured by special benefits, and can never exceed them. That is true in theory, but only in theory. In practice it cannot be enforced. The moment we concede that any one taxpayer has the right to the judgment upon the question of his benefits of any tribunal except the legislature or the body authorized by the legislature to decide the matter, that moment we defeat the power of the legislature to make or authorize special assessments. We adhere to our holding in *Roldph* v. *City of Fargo,* and the judgment in this case is affirmed. All concur.