Filed 5/19/99 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

1999 ND 88

Douglas A. Serenko and 

Shirley A. Serenko; 

Frances Bartole Estate and

John M. Gregoryk Heirs; and

Denis Hedstrom and Hedstrom

Truck Line, Inc., Plaintiffs, Appellees, and Cross-Appellants

v.

The City of Wilton, Defendant, Appellant and Cross-Appellee

No. 980206

Appeal from the District Court of McLean County, South Central Judicial District, the Honorable James M. Vukelic, Judge.

REVERSED.

Opinion of the Court by Neumann, Justice.

Charles R. Isakson, Chapman & Chapman, P.O. Box 1258, Bismarck, ND 58502, for plaintiffs, appellees, and cross-appellants.

David A. Lindell (argued) and William F. Lindell (appearance), Lindell Law Office, P.O. Box 427, Washburn, ND 58577, for defendant, appellant and cross-

appellee.

Serenko v. City of Wilton

No. 980206

Neumann, Justice.

[¶1] The City of Wilton appeals from a judgment invalidating special assessments against two parcels of land, one owned by the estate of Frances Bartole and the heirs of John M. Gregoryk and one owned by Denis Hedstrom and Hedstrom Truck Line, Inc. (collectively “the landowners”).  The landowners and Douglas and Shirley Serenko cross-appeal from the judgment.  We conclude the City’s failure to publish a complete map of the special assessment district did not violate the due process rights of the landowners, and any action by the landowners to invalidate the assessments for failure to follow statutory procedural requirements was barred by N.D.C.C. § 40-22-43.  We further conclude the district court did not err in deciding the assessments were not arbitrary, capricious, or unreasonable.  We therefore reverse the judgment invalidating the assessments.

I

[¶2] On December 4, 1996, the Wilton City Commission adopted a resolution of necessity creating a street improvement district.  Four separate areas of the city were included, designated as Areas A, B, C, and D.  The complete resolution of necessity, including a map of the improvement district, was published in the official newspaper on December 12, 1996.

[¶3] After receiving protests from a significant number of residents in Areas B, C, and D, the City Commission on February 5, 1997, decided to abandon plans to improve those areas, but to continue with the plans for Area A.  Subsequently, the City realized the resolution of necessity had been published only once, not twice as required by N.D.C.C. § 40-22-15.  On June 5 and 12, 1997, the resolution of necessity was again published.  Through no fault of the City, however, the required map accompanying the resolution was not printed in its entirety.  The map was cut off at Seventh Street, and did not show properties located west of Seventh Street which were included in Area A of the improvement district.

[¶4] The landowners own parcels west of Seventh Street which are included in Area A of the improvement district.  Their parcels were shown on the map published in December 1996, but not on the map published in June 1997.  Their property was, however, included in the written description of the property published in June 1997.  The Serenkos own property east of Seventh Street which is in Area A of the improvement district.  The Serenkos’ property was shown in all of the published maps.

[¶5] Unaware that the map had not been published in its entirety, the City proceeded with the assessment process and appointed a special assessment commission.  The City learned of the incomplete publication only after the special assessment list was published in September 1997.  The landowners and Serenkos objected to their assessments, and some adjustments were made to the amount of the assessments.

[¶6] The landowners and Serenkos brought this action, alleging that the City had failed to comply with the notice requirements of N.D.C.C. § 40-22-15, thereby violating their right to due process, and that the City had acted arbitrarily because the assessments exceeded any actual benefits to their property.  After a bench trial, the district court found the City’s assessment method was not arbitrary.  The court also concluded the City’s failure to fully comply with the notice requirements of N.D.C.C. § 40-22-15 by failing to publish a complete map violated the due process rights of the landowners.  The court therefore invalidated the assessments against the landowners’ property west of Seventh Street.  Finding the Serenkos had notice their property was included in the improvement district, the court upheld the assessment against their property.

[¶7] The City appealed, asserting the court erred in invalidating the assessments against the landowners.  The landowners and Serenkos cross-appealed, asserting the court erred in finding the City’s method of determining the assessments was not arbitrary, oppressive, or unreasonable.

II

[¶8] Section 40-22-15, N.D.C.C., requires that a resolution of necessity creating a street improvement district must include a map of the improvement district and must be published twice in the official newspaper:

Resolution declaring improvements necessary--Exception for sewer and water improvements--Contents of resolution--Publication of resolution.
 After the engineer’s report required by section 40-22-10 has been filed and approved, the governing body of the municipality, by resolution, shall declare that it is necessary to make the improvements described therein.  A resolution shall not be required, however, if the improvement constitutes a water or sewer improvement as described in subsection 1 of section 40-22-01, nor if the governing body determines by resolution that a written petition for the improvement, signed by the owners of a majority of the area of the property included within the district, has been received.  The resolution shall refer intelligibly to the engineer’s report, and shall include a map of the municipality showing the proposed improvement districts.  The resolution shall then be published once each week for two consecutive weeks in the official newspaper of the municipality.

[¶9] The City concedes it failed to fully comply with the statute: the first notice, which contained the full map, was only published once; the second notice, although published twice, failed to include a complete map.  The City asserts, however, that its failure to fully comply with the statute is not a constitutional due process violation, and therefore the landowners’ action is barred by N.D.C.C. § 40-22-43.

[¶10] Section 40-22-43 creates a statute of repose for actions based upon defects in the proceedings under N.D.C.C. ch. 40-22, which governs the creation of improvement districts
(footnote: 1):

Defects and irregularities in improvement proceedings are not fatal.
 Defects and irregularities in any proceedings had or to be had under this chapter relating to municipal improvements by the special assessment method, where the proceedings are for a lawful purpose and are unaffected by fraud and do not violate any constitutional limitation or restriction, shall not invalidate such proceedings, and no action shall be commenced or maintained and no defense or counterclaim in any action shall be recognized in the courts of this state founded on any such defects or irregularities in such proceedings, unless commenced within thirty days of the adoption of the resolution of the governing board awarding the sale of warrants to finance the improvement.

[¶11] The landowners did not commence this action within thirty days of the adoption of the resolution awarding the sale of warrants.  Therefore, the dispositive issue on appeal is whether the City’s failure to fully comply with the notice requirements set out in N.D.C.C. § 40-22-15 “violate[d] any constitutional limitation or restriction.”  If not, this action is barred by N.D.C.C. § 40-22-43.  

[¶12] The trial court concluded the failure to follow N.D.C.C. § 40-22-15 violated the constitutional due process rights of the landowners, and their action was therefore not barred by N.D.C.C. § 40-22-43.  Resolution of this issue requires a brief review of the special assessment process for street improvements under N.D.C.C. chs. 40-22 and 40-23.  Upon determining street improvements are necessary in a particular area, the City creates an improvement district setting the boundaries of the project.  N.D.C.C. §§ 40-22-08 and 40-22-09.  The City then passes a resolution of necessity, which must be published in accordance with N.D.C.C. § 40-22-15.  The project may not proceed if the owners of a majority of the property in the improvement district file written protests within thirty days.  N.D.C.C. §§ 40-22-17 and 40-22-18.  If less than a majority of landowners file protests, the City may secure bids on the project and let the contract.  
See
 N.D.C.C. §§ 40-22-18 to 40-22-36.  The City’s special assessment commission then sets the assessments on individual properties within the improvement district, and publishes the assessment list and notice of hearing of objections.  
See
 N.D.C.C. §§ 40-23-07 to 40-23-10.  Aggrieved parties are afforded a hearing before the special assessment commission to challenge their assessments, and may appeal to the City’s governing body.  
See
 N.D.C.C. §§ 40-23-11, 40-23-16.

[¶13] This statutory scheme essentially creates two separate processes.  Chapter 40-

22 governs creation of the assessment district and bidding of the project.  Chapter 40-

23 governs the individualized assessment of specific properties within the district.  The landowners concede that, in the second part of the process, they received notice and a full opportunity to be heard before assessments against their property were finalized.  They availed themselves of the opportunity to challenge the assessments before the special assessment commission and the city commission, and some of their assessments were in fact reduced in that process.  The landowners, however, claim they additionally had a separate constitutional right to notice, including a complete map, at the initial, resolution-of-necessity stage of the proceedings.

[¶14] There is no constitutional right to notice when a municipality initially decides to construct an improvement.  In 
Utley v. City of St. Petersburg
, 292 U.S. 106, 109 (1934), the United States Supreme Court held:

The appellants contend that the special assessment is invalid under the Constitution of the United States, for the reason that the resolution voting the improvement was adopted without an opportunity to landowners to be heard in opposition. . . .  There is no constitutional privilege to be heard in opposition at the launching of a project which may end in an assessment.  It is enough that a hearing is permitted before the imposition of the assessment as a charge upon the land . . . or in proceedings for collection afterwards . . . .

See also
 14 Eugene McQuillin, 
Law of Municipal Corporations
 § 38.03 (3d rev. ed. 1998); 4 Sandra M. Stevenson, 
Antieau on Local Government Law
 § 65.08[6] (2d ed. 1999); 70 Am.Jur.2d 
Special or Local Assessments
 § 162 (1987).  This Court has agreed, holding due process requires only notice and an opportunity to be heard at some point before the individual assessment becomes final.  
E.g.
, 
Patterson v. City of Bismarck
, 212 N.W.2d 374, 383 (N.D. 1973).  As this Court explained in 
Fisher v. City of Minot
, 188 N.W.2d 745, 747 Syll. ¶ 5 (N.D. 1971):

In this jurisdiction an opportunity to be heard with right of review upon the question of assessments for benefits is all that is required to satisfy the due process provisions of the Constitutions of the United States and North Dakota.

See also
 
Patterson
, 212 N.W.2d at 376 Syll. ¶ 2; 
Chernick v. City of Grand Forks
, 210 N.W.2d 73, 79 (N.D. 1973).  This is consistent with our statutory scheme, under which some types of improvements specifically do not require such notice.  
See, e.g.
, N.D.C.C. § 40-22-15 (water and sewer improvements are exempt from requirement to approve and publish a resolution of necessity).  

[¶15] The trial court in this case equated the City’s failure to publish a complete map under N.D.C.C. § 40-22-15 with a constitutional due process violation.  The court has bootstrapped a purely statutory violation into a constitutional defect.  Not every error under state procedural law is a denial of due process.  
Engle v. Isaac
, 456 U.S. 107, 121 n.21 (1982); 
Gryger v. Burke
, 334 U.S. 728, 731 (1948).  As the court explained in 
Levine v. Torvik
, 986 F.2d 1506, 1515 (6th Cir. 1993):

A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable.

The court in 
Jackson v. Cain
, 864 F.2d 1235, 1251-52 (5th Cir. 1989) (quoting 
Brown v. Texas A & M University
, 804 F.2d 327, 335 (5th Cir. 1986) and 
Levitt v. University of Texas at El Paso
, 759 F.2d 1224, 1230 (5th Cir. 1985)), further explained:

A state’s failure to follow its own procedural regulations does not establish a violation of due process, because “constitutional minima may nevertheless have been met.”. . .  “Such action may constitute a . . . violation of state law, but unless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation.”

See also
 
Purisch v. Tennessee Technological University
, 76 F.3d 1414, 1423 (6th Cir. 1996); 
Giovanni v. Lynn
, 48 F.3d 908, 912-13 (5th Cir. 1995).

[¶16] The landowners rely exclusively upon the statute requiring publication of the map and resolution of necessity as the basis for the alleged constitutional violation, recognizing there is no independent constitutional right to notice of a city’s initial decision to proceed with public improvements.  In this instance, the legislature has created a statutory procedure which affords greater notice and opportunity to be heard than is constitutionally required by the due process clause.  Having created the procedure, the legislature can also limit the remedies for violating its statutory procedure.  In this case, the remedy is limited to a thirty-day period after the adoption of the resolution awarding sale of the warrants to finance the improvement.  N.D.C.C. § 40-22-43.  As long as that limitation of remedy does not fall below the separate “constitutional minima,” there is no constitutional violation.  
See
 
Giovanni
, 48 F.3d at 913; 
Jackson
, 864 F.2d at 1251.

[¶17] The validity of these types of statutes, and their non-constitutional nature, is explained in 70A Am.Jur.2d 
Special or Local Assessments
 § 146 (1987):

Some statutes expressly provide for due notice and opportunity for hearing or right of protest with respect to a special or local assessment.  Provision is sometimes made by statute for filing objections and for a hearing on the report of an assessment.

Some statutes provide that within a certain number of days after the last publication of a resolution of intention to make an improvement, a protest, also called a remonstrance, may be filed against the proposed improvement.  The right may be given to a certain percentage, frequently over 50 percent of the owners in an area or district, to sign a petition of remonstrance or protest and thereby defeat a proposed public improvement.  Such a right of property owners arbitrarily to defeat a proposed street improvement by a majority, or a certain percentage, of the affected property owners simply filing protests or remonstrances, is, at the most, merely a statutory privilege, partaking in its nature of none of the essentials of an inherent right protected by constitutional guaranties.

[¶18] We conclude N.D.C.C. § 40-22-15 creates a purely statutory right to notice of the resolution of necessity.  The City’s failure to publish a complete map of the project, while a statutory violation, did not deprive the landowners of their constitutional right to due process.  Because the landowners did not commence their action within the thirty-day time limit under N.D.C.C. § 40-22-43, their action based upon irregularities or defects under N.D.C.C. ch. 40-22 is barred.

III

[¶19] The landowners and Serenkos assert the method of calculating assessments chosen by the special assessment commission resulted in assessments against their property which exceeded any actual benefit, and was therefore arbitrary, oppressive, and unreasonable.  We disagree.

[¶20] Our review of a municipality’s decisions on special assessments is limited by the doctrine of separation of powers.  
E.g.
, 
Haman v. City of Surrey
, 418 N.W.2d 605, 607 (N.D. 1988).  The special assessment commission is in essence a legislative tribunal created by legislative authority to “(1) determin[e] the benefits accruing to the several tracts of land in an improvement district by reason of the construction of an improvement and (2) assess[] the costs and expenses thereof against each tract in proportion to the benefit received.”  
Haman
, 418 N.W.2d at 608 (quoting 
Cloverdale Foods Co. v. City of Mandan
, 364 N.W.2d 56, 60 (N.D. 1985)).  Accordingly,  judicial review is limited to assuring that local taxing authorities do not act arbitrarily, capriciously, or unreasonably.  
Farmers Union Central Exchange, Inc. v. Grand Forks County
, 443 N.W.2d 907, 910 (N.D. 1989); 
Haman
, 418 N.W.2d at 607.  Courts are not to act as a super grievance board, and we do not try special assessment cases anew or reweigh the evidence.  
Farmers Union
, 443 N.W.2d at 910; 
Haman
, 418 N.W.2d at 607.  Rather, we begin with the presumption that assessments for local improvements are valid, and the burden is on the party challenging the validity of the assessments to demonstrate they are invalid.  
Cloverdale
, 364 N.W.2d at 60; 
Soo Line Railroad Co. v. City of Wilton
, 172 N.W.2d 74, 79 (N.D. 1969).

[¶21] Included within the broad discretion accorded to the special assessment commission is the discretion to choose the method used to determine benefits and apportion costs to individual properties within the improvement district:

Quoting 14 McQuillin 
Mun. Corp.
 (3rd ed. rev. 1970), we recognized in 
Cloverdale Foods Co. v. City of Mandan
, 364 N.W.2d 56, 61 (N.D. 1985):

“‘. . . Where no rule of apportionment is prescribed by statute or charter, the municipality may adopt “any mode that would be fair and legal” and such as would secure an assessment in proportion to the benefits accruing as nearly as practicable.  “Absolute equality is not to be expected.”. . .’”

And, more recently, we said:

“[T]he process of quantifying benefits accruing to each lot inevitably rests on the judgment and discretion of the special assessment commission.  There simply is no precise formula for quantifying benefits.”  
Haman v. City of Surrey
, 418 N.W.2d 605, 608 (N.D. 1988).

The statutory directive is “just proportion,” not absolute uniformity.

Farmers Union
, 443 N.W.2d at 910.  We recognized in 
Cloverdale
, 364 N.W.2d at 61:

It is generally held that an “assessment may be apportioned according to frontage, area, value of, or estimated benefits to, the property assessed, or according to districts or zones, or on any other reasonable basis that is fair, just, and equitable.”  63 C.J.S. 
Municipal Corporations
 § 1423, p. 1212.

[¶22] In this case, the special assessment commission studied various potential methods to assess the property in the improvement district and decided to apportion the costs based upon square footage of the lots.  At trial, members of the special assessment commission explained why that method was determined to best approximate the benefits of the street repair project to the lots in the improvement district.  The landowners and Serenkos assert this method did not sufficiently individualize the determination of benefits to their properties, and failed to properly consider the undeveloped nature of their property.

[¶23] We have rejected similar arguments in the past and upheld assessments based upon square footage of the property.  
Buehler v. City of Mandan
, 239 N.W.2d 522, 525-26 (N.D. 1976); 
see also
 
Cloverdale
, 364 N.W.2d at 61 (property may be assessed according to area).  Although the landowners and Serenkos may disagree with the special assessment commission’s choice of method, and with its conclusion their properties were substantially benefitted by the street improvement project, it is not our function to reweigh the evidence.  The landowners and Serenkos have failed to meet their burden of demonstrating the commission acted arbitrarily, capriciously, or unreasonably.

IV

[¶24] We reverse the judgment invalidating the assessments.

[¶25] William A. Neumann

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:    
The actual assessment of individual properties is governed by N.D.C.C. ch. 40-23, and N.D.C.C. § 40-22-43 by its terms would not apply to proceedings under that chapter.